UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINETTE H. JOHNSON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:20-cv-778

# OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff, who is proceeding pro se in this appeal, seeks review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on April 25, 2018, alleging that she had become disabled as of her filing date. (PageID.130.) Plaintiff alleged disability due to right rotator cuff, lack of sleep, paranoid schizophrenia, and dry eyes and pain from dryness. (*Id.*) Plaintiff was 60 years old at the time she filed her application. (PageID.129.) Plaintiff graduated from high school

and had two years of college. (PageID.222.) She had past relevant work as a telephone representative, a medical secretary, and an office assistant. (PageID.63, 223.) After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge (ALJ).

On September 18, 2019, ALJ Nicholas M. Ohanesian held a hearing and received testimony from Plaintiff and Sandra Smith-Cordingly, an impartial vocational expert (VE). (PageID.68–127.) On September 30, 2019, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.55–64.) The Appeals Council denied Plaintiff's request for review on July 2, 2020. (PageID.45–47.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on August 18, 2020.

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the Act's insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since her alleged onset date, the ALJ found at step two that Plaintiff suffered from a severe impairment of right shoulder rotator cuff syndrome. (PageID.57.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.58.) The ALJ considered listing 1.02 (dysfunction of a major joint). (*Id.*)

---

must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she could climb ladders, ropes, or scaffolds occasionally and reach overhead with the dominant right upper extremity occasionally. (*Id.*)

At step four, the ALJ found that Plaintiff was not disabled because she was capable of performing her past relevant work as a telephone representative, clerk general, and medical secretary. (PageID.63.)

## **DISCUSSION**

Plaintiff raises numerous arguments, many of which concern procedural issues that do not directly address the ALJ's decision. Nonetheless, the Court will begin with Plaintiff's arguments that concern the decision itself. In addition, in light of Plaintiff's pro se status, the Court has thoroughly reviewed the record to determine whether the ALJ's decision in this matter is in any way defective or deficient.

To begin, Plaintiff argues that the ALJ erred at step two because he failed to articulate the effects of Plaintiff's impairments on Plaintiff's work activities. (ECF No. 21 at PageID.357.) Because the ALJ performed this analysis in connection with his RFC finding, this argument lacks merit. At step two, the ALJ properly found that Plaintiff's right shoulder rotator cuff syndrome was a severe impairment because it significantly limits Plaintiff's ability to perform basic work activities. (PageID.57–58.) Thus, the ALJ proceeded to the subsequent steps in the analysis.

Plaintiff next argues that the ALJ erred at step three by failing to evaluate her mental impairment of paranoid schizophrenia. (ECF No. 21 at PageID.357.) Plaintiff fails to show that the ALJ erred in not considering whether her alleged paranoid schizophrenia met a listing. First, Plaintiff testified that the Postal Service had a doctor diagnose her as a paranoid schizophrenic around 2002, but she was later told that she did not have that diagnosis. (PageID.89.) On July 6, 2018, Plaintiff told the mental consultative examiner that she believed the psychiatrist had

5

fabricated that diagnosis in 2002 to allow the Postal Service to justify its termination of her employment. (PageID.318.) Plaintiff also denied symptoms of paranoid schizophrenia to the examiner. (*Id.*) The consultative examiner found "no evidence of a significant mental illness or cognitive dysfunction." (PageID.321.) Similarly, in July 2018, the State agency psychiatric consultant opined that no medically determinable mental impairments were established. (PageID.134.) Finally, there is no indication in the record that Plaintiff had received any mental health treatment before or after her alleged onset date. Thus, substantial evidence supports the ALJ's conclusion that paranoid schizophrenia was not a medically determinable impairment, and he did not err in not considering whether it met a listing.

The ALJ also did not err in determining Plaintiff's RFC. The ALJ properly evaluated Plaintiff's symptoms in accordance with 20 C.F.R. § 1529(c)(3) and SSR 16-3p. First, regarding Plaintiff's shoulder impairment, the ALJ noted that in January 2014, Plaintiff reported that she had tripped and fallen the previous month, injuring her right shoulder. (PageID.59.) The office note indicated that x-rays showed moderate degenerative arthritis of the acromioclavicular joint and calcific tendonitis over the greater tubercle. The diagnosis was right rotator cuff syndrome, probable tear based on history and examination. (PageID.59, 302.) There was no evidence of fracture or dislocation. Plaintiff was instructed to take NSAIDs for discomfort and advised to follow up with a specialist. (PageID.59, 302.) Later that month, Plaintiff was seen by Mark S. Asperheim, M.D. Plaintiff reported 3/10 pain, although she said that the level increased to 6-7/10 at night. The doctor noted that Plaintiff was in no distress, had active forward flexion to 80 degrees, and full motion passively. There was no localized tenderness, and Plaintiff was intact neurologically. (PageID.59, 304.) Dr. Asperheim assessed impingement of the right shoulder and indicated that Plaintiff needed to work on range of motion of the shoulder. He recommended

prescription Ibuprofen, referred her to physical therapy, and ordered a home exercise program. Plaintiff was to return in 6-8 weeks. (PageID.59, 305.) As the ALJ noted, there is no evidence in the record that Plaintiff followed Dr. Asperheim's recommendations or had any regular or ongoing treatment subsequent to the January 2014 office visit. (PageID.59.) Indeed, there is no evidence in the medical record indicating that Plaintiff received any treatment for her shoulder after the January office visit. The ALJ also considered that Plaintiff did not take any pain medication for her shoulder, and treated her pain conservatively with ice packs, heating pads, baths, and physical movement. (PageID.59.) In addition, the ALJ noted that following a physical examination on July 17, 2018, the consultative examiner reported unremarkable findings and indicated that Plaintiff was able to complete all of the requested tasks without difficulty. (PageID.60, 325–26.)

Next, the ALJ noted the absence of evidence regarding sleep issues, such as a sleep study or frequent visits to a physician seeking medication for sleep issues. Similarly, the ALJ noted the absence of evidence "to support or refute a diagnosis of dry eyes or that this condition was a severe impairment." (PageID.60.)

Finally, the ALJ considered Plaintiff's daily activities, finding them somewhat inconsistent with her reported symptoms. (PageID.61.) It was appropriate for the ALJ to take Plaintiff's daily activities into account in evaluating her symptoms. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

The ALJ also properly complied with 20 C.F.R. § 1520c in evaluating the medical opinions. Plaintiff argues that the ALJ erred in failing to give controlling weight "to SVS Vision," but this argument lacks merit. First, to the extent Plaintiff relies on the treating physician rule, it does not apply in this case as Plaintiff filed her application after March 27, 2017. Moreover, the

7

only evidence in the record pertaining to SVS Vision is an April 23, 2018 treatment record, which does not qualify as a medical opinion as defined in 20 C.F.R. § 404.1527(a).

Next, the ALJ's step four determination that Plaintiff could perform her past relevant work was supported by substantial evidence. Based on Plaintiff's testimony regarding her past work, the VE testified that Plaintiff's past relevant work was skilled or semiskilled at the sedentary exertional level as generally performed and sedentary to medium as performed by Plaintiff. (PageID.102–03.) The VE testified that a person with Plaintiff's RFC could perform Plaintiff's past work. (PageID.103–04.) The ALJ properly relied on the VE's testimony to determine that Plaintiff could perform her past relevant work. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Plaintiff's argument that the ALJ failed to complete Form SSA-4734-BK at step four is misplaced, as that form is a Physical Residual Functional Capacity assessment competed by a medical consultant, not an ALJ. *See Johnson v. Astrue*, No. 1:10-CV-299, 2011 WL 6415386, at *7 (D. Vt. Oct. 31, 2011), *report and recommendation adopted*, 2011 WL 6337788 (D. Vt. Dec. 16, 2011). Thus, the ALJ did not err in failing to apply the grids or in not finding Plaintiff disabled at step five, as Plaintiff contends.

Plaintiff's remaining arguments are easily dispatched. First, Richard C. Davis, the Chief of Branch 3, signed the certification of the administrative record electronically. (PageID.41.) Second, Plaintiff was provided a paper copy of the administrative proceedings transcript filed in this case. (ECF No. 14.) Third, although Plaintiff argues that she was not provided an audio recording of the hearing, the recording was transcribed and made a part of the record. (PageID.68–127.) Finally, Plaintiff's argument that the record was incomplete because it did not contain her psychiatric diagnosis from 2001 lacks merit. While it is true that an ALJ has an obligation to "develop the record fully and fairly," *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004), "[i]t is not

unreasonable to require the claimant, who is in a better position to provide information about h[er] own medical condition, to do so." *Yuckert*, 482 U.S. at 146 n.5 (1987); *see also* 20 C.F.R. § 404.1512 (b) (noting that before a determination is made on an application, the Social Security Administration will develop the claimant's "complete medical history for at least the 12 months preceding the month in which" the application is filed). As the Commissioner notes, the prior file had already been purged and, therefore, was not available for the ALJ to review. (PageID.227.) Finally, the prior file, being more than 15 years old, was not relevant to Plaintiff's current condition, particularly because Plaintiff had worked for three other employers in the interim and said that she had quit work in April 2018 only because of her physical limitations. (PageID.318.) Moreover, the most recent psychiatric evidence indicated that Plaintiff demonstrated no signs or symptoms of a significant mental illness.

Accordingly, the ALJ's decision was supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: March 14, 2022                                                    /s/ Sally J. Berens
                                                                                                 SALLY J. BERENS
                                                                                                 U.S. Magistrate Judge